[No. H012780. Sixth Dist. July 26, 1995.]

BETTY SCHALL, Plaintiff and Appellant, v.
LOCKHEED MISSILES AND SPACE COMPANY, INC., Defendant and
Respondent.

1486

## COUNSEL

William N. Woodson III and Thomas E. Kotoske for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, John C. Cook, Daniel P. Westman, Anna E. Goodwin and Angela M. Nolan for Defendant and Respondent.

## OPINION

**PREMO, J.**—Plaintiff Betty Schall sued her employer, defendant Lockheed Missiles and Space Company, Inc., for sexual harassment. During *in limine* proceedings, the trial court ruled plaintiff incompetent to testify about the harassment because her only memory of the behavior occurred after she had been hypnotized by her therapist. Plaintiff then conceded that she had no evidence of the harassment other than her testimony. The trial court therefore ordered a nonsuit. Plaintiff appeals, and we affirm the judgment.

### SCOPE OF REVIEW

Plaintiff's briefs betray a fundamental misunderstanding about the procedural posture of this case. Plaintiff points to the nonsuit and argues that we must follow the rule which accepts the evidence most favorable to her and reverse if this evidence would support a jury verdict. She overlooks, however, that she conceded no evidence supported her claim. Thus, under the nonsuit rubric, the judgment logically follows from plaintiff's concession.

The reason for plaintiff's concession is what gives this appeal vitality. Plaintiff conceded her case because of the trial court's evidentiary ruling. It is this evidentiary ruling that plaintiff asks us to review, not the ruling granting a nonsuit.

The rules of appellate review within this framework are those applicable to discretionary evidentiary rulings or, more precisely, a ruling on a witness's competency. In general, under these rules the appellate court presumes the correctness of the trial court's ruling and requires the appellant to affirmatively show error. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) And the appellate court necessarily considers the evidence in a light most favorable to the respondent. (*People* v. *Culver* (1973) 10 Cal.3d 542, 547 [111 Cal.Rptr. 183, 516 P.2d 887].)[1]

We note, however, that plaintiff's principal contention is framed as a legal question. She argues that the trial court erred by applying Evidence Code section 795[2] to this case. To the extent we determine the applicability of this statute, our review is independent. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].)

### LEGAL, PROCEDURAL, AND FACTUAL BACKGROUND

In *People* v. *Shirley* (1982) 31 Cal.3d 18 [181 Cal.Rptr. 243, 723 P.2d 1354], the Supreme Court answered the troublesome question whether a witness may be allowed to testify after undergoing case-related hypnosis by adopting a per se inadmissibility rule: "[T]he testimony of a witness who has undergone hypnosis for the purpose of restoring his memory of the events in issue[3] is inadmissible as to all matters relating to those events, from the time of the hypnotic session forward." (*Id.* at pp. 66-67.) Although the rule arose from the context of a criminal case, it was grounded upon the generally applicable and well-known *Kelley-Frye*[4] standard that conditions the admissibility of evidence based on a new scientific method of proof on a showing that the technique has been generally accepted as reliable in the scientific

---

[1]"A trial court's determination concerning a witness's competency will not be reversed on appeal absent an abuse of discretion." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 166 [5 Cal.Rptr.2d 450].) "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" (*Troxell* v. *Troxell* (1965) 237 Cal.App.2d 147, 152 [46 Cal.Rptr. 723].) "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." (*People* v. *Preyer* (1985) 164 Cal.App.3d 568, 573-574 [210 Cal.Rptr. 807].)

[2]Further statutory references are to the Evidence Code unless otherwise indicated.

[3]"We . . . characterized 'events in issue' as those that were 'the subject of the hypnotic session.' [Citation.]" (*People* v. *Hayes* (1989) 49 Cal.3d 1260, 1269 [265 Cal.Rptr. 132, 783 P.2d 719].)

[4]*People* v. *Kelley* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013 [54 App.D.C. 46, 34 A.L.R. 145].

community in which it developed. (31 Cal.3d at p. 23 ["[T]he testimony of such a witness should not be admitted in the courts of California."]; *id.* at pp. 51-52 ["The *Frye* rule is deeply ingrained in the law of this state," citing *Huntingdon* v. *Crowley* (1966) 64 Cal.2d 647, 653-656 [51 Cal.Rptr. 254, 414 P.2d 382], in addition to criminal cases]; accord, *Lemieux* v. *Superior Court of Arizona etc.* (1982) 132 Ariz. 214 [644 P.2d 1300, 1301, 31 A.L.R.4th 1231] ["The concerns that this Court expressed in determining that posthypnotic testimony is unreliable in criminal trials are equally applicable in civil litigation"].)[5]

In June 1982, the electorate amended the California Constitution via Proposition 8 to provide that, with certain specified exceptions, all relevant evidence is admissible in a criminal proceeding. (Cal. Const., art. I, § 28.) This amendment arguably overruled *Shirley* to allow a witness in a criminal proceeding to testify notwithstanding having been hypnotized. In 1984, effective January 1, 1985, the Legislature enacted section 795. This section was intended to clarify whether and under what circumstances a witness may testify after having been hypnotized before trial. (*People* v. *Aguilar* (1990) 218 Cal.App.3d 1556, 1563 [267 Cal.Rptr. 879].) Section 795 now provides:

"(a) The testimony of a witness is not inadmissible in a criminal proceeding by reason of the fact that the witness has previously undergone hypnosis for the purpose of recalling events which are the subject of the witness's testimony, if all of the following conditions are met:

"(1) The testimony is limited to those matters which the witness recalled and related prior to the hypnosis.

"(2) The substance of the prehypnotic memory was preserved in written, audiotape, or video tape form prior to the hypnosis.

---

[5]The court noted four criminal-context limitations on the per se inadmissibility rule: "First, a previously hypnotized witness is not incompetent in the strict sense of being unable to express himself comprehensibly or understand his duty to tell the truth [citation], or of lacking the general capacity both to perceive and remember [citation]. Accordingly, if the prosecution should wish to question such a witness on a topic *wholly unrelated* to the events that were the subject of the hypnotic session, his testimony as to that topic would not be rendered inadmissible by the present rule. [¶] Second, when it is the defendant himself—not merely a defense witness—who submits to pretrial hypnosis, the experience will not render his testimony inadmissible if he elects to take the stand. In that case, the rule we adopt herein is subject to a necessary exception to avoid impairing the fundamental right of an accused to testify in his own behalf." (*People* v. *Shirley, supra,* 31 Cal.3d at p. 67.) Third, the court cautioned that it was not foreclosing the continued use of hypnosis by the police for purely investigatory purposes. And fourth, it stated that error in admitting the testimony of a previously hypnotized witness was reversible only if prejudicial under the standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. The court held *Shirley* to be retroactive in *People* v. *Guerra* (1984) 37 Cal.3d 385 [208 Cal.Rptr. 162, 690 P.2d 635].

"(3) The hypnosis was conducted in accordance with all of the following procedures:

"(A) A written record was made prior to hypnosis documenting the subject's description of the event, and information which was provided to the hypnotist concerning the subject matter of the hypnosis.

"(B) The subject gave informed consent to the hypnosis.

"(C) The hypnosis session, including the pre- and post-hypnosis interviews, was video tape recorded for subsequent review.

"(D) The hypnosis was performed by a licensed medical doctor, psychologist, or licensed clinical social worker experienced in the use of hypnosis or a licensed marriage, family and child counselor certified in hypnosis by the Board of Behavioral Science Examiners and independent of and not in the presence of law enforcement, the prosecution, or the defense.

"(4) Prior to admission of the testimony, the court holds a hearing pursuant to Section 402 of the Evidence Code at which the proponent of the evidence proves by clear and convincing evidence that the hypnosis did not so affect the witness as to render the witness' prehypnosis recollection unreliable or to substantially impair the ability to cross-examine the witness concerning the witness' prehypnosis recollection. At the hearing, each side shall have the right to present expert testimony and to cross-examine witnesses.

"(b) Nothing in this section shall be construed to limit the ability of a party to attack the credibility of a witness who has undergone hypnosis, or to limit other legal grounds to admit or exclude the testimony of that witness."

In *People* v. *Hayes, supra,* 49 Cal.3d 1260, a case predating the enactment of section 795, the court concluded that the section was prospective only but that *Shirley*'s per se rule should be modified. It held that ". . . a witness is permitted to testify to events that the trial court finds the witness both recalled and related to others before undergoing hypnosis." (*Id.* at p. 1273.)

From 1988 to 1991, plaintiff worked in a classified program requiring a security clearance. She violated security, and defendant transferred her to a nonclassified job on May 16, 1991. Plaintiff, however, took sick leave and

vacation and has never worked at the new position. During the time she was working, plaintiff never made any internal complaints of sexual harassment.[6]

Plaintiff's case was predicated upon the following allegations made in the fourth amended complaint: "During the time frame between 1988 to 1991, and plaintiff cannot recall the dates more specifically, plaintiff's manager, Mr. Barnes, would repeatedly, at least on a bi-weekly basis, as best as plaintiff can recall, would refer to plaintiff, and other female co-workers of plaintiff's as 'bitches,' in a loud voice in the work place. During this same time, and plaintiff cannot recall the specific dates, plaintiff's manager, Mr. Barnes, would refer to plaintiff's female co-workers as 'sluts' and 'whores' in a voice loud enough for other co-workers to hear, including plaintiff. The references to plaintiff's female co-workers as 'sluts' or 'whores' was occasional, that is at least three or four times a year during the time frame of 1988 to 1991. And, during this same time frame, plaintiff's manager, Mr. Barnes, in plaintiff's presence, in the work place, would refer to plaintiff's female co-workers as, 'being stacked like a brick shithouse.' Plaintiff heard the latter comment, made by Mr. Barnes, on at least two occasions during the above alleged time frame and specifically during 1990."

During discovery, plaintiff provided no witnesses who could corroborate her allegations, and disclosed that she had sought mental health counseling after losing her classified position. When defendant deposed plaintiff's therapist it learned that plaintiff had been hypnotized as part of the therapy and her memory of the facts alleged in the complaint happened after undergoing this treatment. Defendant then prepared a written motion *in limine* to exclude the hypnotically recalled evidence. Plaintiff countered by asserting that the hypnosis used was not for the purpose of restoring plaintiff's memory, but to allow "plaintiff to 'access feelings' about what was happening to her *as a result* of the conduct of [defendant]." She also claimed that her prehypnotic recollections were admissible in any event. She further took the position that her testimony was not, in fact, hypnotically induced or refreshed.

At the hearing, the trial court indicated that it was disinclined to apply a per se rule of inadmissibility and would apply the criteria of section 795 to determine admissibility of the evidence in question.

[6]After defendant took plaintiff off the classified project and at the request of defendant's Human Resources Equal Opportunity Programs office, plaintiff prepared a nine-page document called a history of events. According to plaintiff the document was a thorough statement of what she remembered had happened to her. The document gives detail about plaintiff's discontent about the general work situation. It does state that plaintiff's manager called her an "uppity bitch" or "pushy broad" once in 1988. Plaintiff does not dispute that this one isolated comment is insufficient to establish a case of sexual harassment and would, in any event standing alone, be behavior outside the statute of limitations.

Plaintiff's therapist, a psychiatrist, and plaintiff testified at the hearing. To recount in short, plaintiff attended therapeutic sessions for approximately one month before undergoing hypnosis and gradually remembering her manager's sexual harassment behavior. And the evidence was conflicting whether plaintiff told her therapist about the behavior in the prehypnotic sessions. Afterward, the trial court concluded that plaintiff was hypnotized in order "to have [plaintiff] recall events, and that those events are the subject of [plaintiff's] testimony."

## DISCUSSION

We agree with plaintiff's principal contention, as does defendant. Section 795 has no application to civil actions. By its terms the section applies in "a criminal proceeding."

We fail, however, to understand the advantage plaintiff gains by this success. *Shirley* precludes hypnotically restored testimony in civil cases. This per se rule of inadmissibility was qualified only by *Hayes*, which enlarged *Shirley* to permit testimony about events recalled and related to others prior to the hypnotic session.

Thus, when faced with an evidentiary challenge in a civil case based upon *Shirley-Hayes*, a trial court must necessarily conduct a hearing to determine (1) whether the witness underwent hypnosis, (2) for the purpose of restoring memory about the subject of the hypnotic session, and (3) if applicable, whether any proposed testimony is about events recalled and related to others prior to the hypnotic session.

The trial court conducted such a hearing in this case. Plaintiff fails to explain why the trial court's articulated reliance upon section 795 is significant. Plaintiff's substantive contentions challenge the trial court's *Shirley-Hayes* findings.

First, plaintiff suggests that she did not undergo hypnosis. She accedes only that she "was subjected to light hypnosis (a deep breathing exercise) . . . ."

The trial court, however, specifically found that "there's no question that there was hypnosis." Since plaintiff cites no authority for the proposition that "light hypnosis" is not hypnosis, the trial court was entitled to reason

that being a little bit hypnotized is the equivalent of being hypnotized for purposes of *Shirley*.

Second, plaintiff disagrees that the purpose of the hypnosis was to restore her memory of the events in issue. She points to her therapist's testimony explaining that the hypnosis was solely for the purpose of relaxing her and that she, the therapist, never tried to enhance plaintiff's memory. Plaintiff's analysis is erroneous.

The trial court specifically addressed this point, and we agree with its reasoning. The purpose element of the *Shirley* analysis is unrelated to the therapist's subjective intent. This follows because the vice of hypnosis, in the legal sense, is the unreliability of the facts restored by the process, not of a specific goal to recover facts in aid of litigation. The purpose element therefore refers to precluding testimony about the witness's restored memory as to "the subject of the hypnotic session." (*People* v. *Shirley*, *supra*, 31 Cal.3d at p. 67; *People* v. *Hayes*, *supra*, 49 Cal.3d at p. 1269.) Thus, the therapist's testimony about her intent in hypnotizing plaintiff was irrelevant.

Here, there is no question that a subject of plaintiff's hypnotic sessions was her recovering memory about the events in issue. Plaintiff does not dispute this salient fact; she only disclaims that the subjective purpose of the sessions was to recover memory about the events in issue.

Third, plaintiff claims that some proposed testimony was about events recalled and related to her therapist prior to the hypnotic sessions. As we have noted, however, the evidence showing this fact is, at best, conflicting. It is sufficient to note that the trial court received an affirmative response from plaintiff's therapist when it asked the therapist the following in regard to pre-hypnotic sessions and plaintiff's allegations: "[I]t is a fact that, with reference to quite a number of these specifics, either she did not verbalize those specific events to you, or in the alternative you have no recollection of her having done so. Is that accurate?"

Plaintiff finally argues that defendant waived any contention that her testimony was unreliable because it relied upon her testimony in its motion for summary judgment. She admits that she has no authority for such a proposition. We doubt any exists. In our experience it is common practice

for one litigant to accept an adversary's facts for one purpose but not another.[7]

DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Elia, J. concurred.

---

[7]Plaintiff argues for the first time in her reply brief that the trial court erred by not allowing her testimony under the second *Shirley* exception permitting parties as opposed to witnesses to testify. There is no merit to this contention. The second *Shirley* exception applies to criminal defendants, not parties. (*Ante*, fn. 5.) It is grounded upon a criminal defendant's constitutional right to testify in his or her own defense, a right not applicable to parties in civil litigation.