86 Cal.Rptr.2d 204 (1999)
73 Cal.App.4th 250
La Donna WILSON et al., Plaintiffs and Respondents,
v.
John R. PHILLIPS, Defendant and Appellant.
No. G019891.
Court of Appeal, Fourth District, Division Three.
June 30, 1999.
Rehearing Denied July 30, 1999.
Review Denied October 6, 1999.[*]
*205 Bruce Cornblum, San Diego, for Defendant and Appellant.
Thomas A. Pavlinic as Amicus Curiae on behalf of Defendant and Appellant.
FamelI, Koontz & Norman and Margaret Kathryn Maas, Newport Beach, for Plaintiffs and Respondents.

OPINION
SONENSHINE, J.[**]
John R. Phillips appeals from a judgment following a jury finding that he sexually battered and intentionally inflicted emotional distress on his daughter Stephanie Marie Nemeth and his stepdaughter La Donna Wilson. Phillips contends the court erroneously admitted expert testimony on the phenomenon of repressed memory. He also argues the statute of limitations governing childhood sexual abuse claims lacks sufficient safeguards to protect against false allegations of molestation. We affirm.[1]

I
Late one evening in December 1989, Wilson, then age 30, awoke to get a drink of water. When she returned to her room, she had a disturbing memory of Phillips molesting her as a child. Until then, Wilson had never remembered being molested. She was so distraught by the memory *206 that she ran into the bathroom and vomited.
Over the next few months, Wilson began recalling that Phillips regularly molested her from the time she was four years old until she turned sixteen. In the spring of 1990, Wilson divulged the memories to her family, including Nemeth. Not long after that, Nemeth, then age 25, started having dreams and flashbacks about Phillips molesting her from ages 3 through 12.
On September 25, 1990, Wilson sued Phillips for sexual assault and battery, intentional and negligent infliction of emotional distress, and negligence. Ten months later, Nemeth was added as a plaintiff in the suit.
At trial, plaintiffs called their treating therapist, Kimberly Hart, a marriage, family and child counselor. Shortly after Hart took the stand, Phillips requested an Evidence Code section 402 hearing on the admissibility of Hart's opinion as to whether plaintiffs had ever been sexually abused. However, when plaintiffs' counsel assured the court she did not intend to elicit any such testimony, Phillips withdrew his objection. Thereafter, Hart testified both plaintiffs had exhibited psychological symptoms consistent with persons who had been sexually abused as children. Phillips did not object to this testimony.
Plaintiffs also called Dr. Diana Elliot, a psychologist specializing in the field of sexual abuse and memory. Concerned that Dr. Elliot would offer her opinion on the validity of plaintiffs' memories, Phillips asked the court to hold a "Kelly-Frye" hearing to determine whether the theory of repressed memory is generally accepted in the scientific community. (See People v. Kelly (1976) 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 and Frye v. United States (D.C.Cir.1923) 293 F. 1013.)[2] The court denied the request but welcomed Phillips to cross-examine Elliot and call his own expert on the issue.
Dr. Elliot testified studies have shown that individuals who have suffered a painful or traumatic experience sometimes repress their memories of the event. Known as dissociative amnesia, this phenomenon is common in sexual assault victims. Children are particularly prone to repress their memories of sexual assault, because they lack the cognitive ability to rationalize their victimization. As they grow older, however, an event or circumstance in their life can actually "trigger[ ] the recall of the memory." According to Dr. Elliot, memories recalled in this fashion are as accurate as those which have never been repressed.
Based on her evaluation of the plaintiffs, Dr. Elliot believed their psychological profiles, including the manner in which they recalled being molested, were consistent with other individuals who had repressed their memories of childhood sexual abuse. Phillips did not offer any experts to refute Dr. Elliot's testimony.

II
Phillips contends the trial court should have excluded Dr. Elliot's testimony under Kelly-Frye because the theory of repressed memory is not generally accepted in the scientific community. Finding Dr. Elliot's testimony was not subject to Kelly-Frye, we uphold the admission of her testimony.[3]
*207 In Kelly, the California Supreme Court held the admissibility of expert testimony based on "a new scientific technique" requires proof of its reliability. (People v. Kelly, supra, 17 Cal.3d at p. 30, 130 Cal.Rptr. 144, 549 P.2d 1240.) To satisfy this requirement, the proponent of the testimony must show: (1) the technique has gained general acceptance in the particular field to which it belongs, (2) any witness testifying on general acceptance is properly qualified as an expert on the subject, and (3) correct scientific procedures were used in the particular case.(Ibid.)
"The Kelly test is intended to forestall the jury's uncritical acceptance of scientific evidence or technology that is so foreign to everyday experience as to be unusually difficult for laypersons to evaluate. In most other instances, the jurors are permitted to rely on their own common sense and good judgment in evaluating the weight of the evidence presented to them." (People v. Venegas (1998) 18 Cal.4th 47, 80, 74 Cal.Rptr.2d 262, 954 P.2d 525, citations omitted.)
One such instance involves the evaluation of expert psychological testimony, as illustrated in the recent case People v. Ward (1999) 71 Cal.App.4th 368, 83 Cal. Rptr.2d 828. There, the court considered whether psychiatric and psychological testimony relating to the defendant's propensity to repeat his sexually violent behavior was subject to Kelly-Frye. In deciding it was not, the court explained, "California distinguishes between expert medical opinion and scientific evidence; the former is not subject to the special admissibility rule of Kelly-Frye. Kelly-Frye applies to cases involving novel devices or processes, not to expert medical testimony, such as a psychiatrist's prediction of future dangerousness or a diagnosis of mental illness. [¶] Similarly, the testimony of a psychologist who assesses whether a criminal defendant displays signs of deviance or abnormality is not subject to Kelly-Frye." (Id. at p. 373, 83 Cal.Rptr.2d 828, citations omitted.)
There is good reason why courts draw a distinction between expert medical testimony and evidence derived from a new scientific device or procedure. "When a witness gives his [or her] personal opinion on the standeven if he [or she] qualifies as an expertthe jurors may temper their acceptance of his [or her] testimony with a healthy skepticism born of their knowledge that all human beings are fallible. But the opposite may be true when the evidence is produced by a machine: like many laypersons, jurors tend to ascribe an inordinately high degree of certainty to proof derived from an apparently `scientific' mechanism, instrument, or procedure. Yet the aura of infallibility that often surrounds such evidence may well conceal the fact that it remains experimental and tentative. [Citation.]" (People v. McDonald (1984) 37 Cal.3d 351, 372-373, 208 Cal.Rptr. 236, 690 P.2d 709.)
McDonald is best known for sanctioning the use of expert testimony on the psychological factors relating to the reliability of eyewitness identification. Rejecting the notion a jury would be inclined to give undue credence to such testimony, the court observed, "We have never applied the Kelly-Frye rule to expert medical testimony, even when the witness is a psychiatrist and the subject matter is as esoteric as the reconstitution of a past state of mind or the prediction of future dangerousness, or even the diagnosis of an unusual form of mental illness[.]" (People v. McDonald, supra, 37 Cal.3d at p. 373, 208 Cal.Rptr. 236, 690 P.2d 709.)[4]
*208 The Supreme Court's reluctance to apply Kelly-Frye to expert psychological testimony was demonstrated once again in People v. Stoll (1989) 49 Cal.3d 1136, 265 Cal.Rptr. 111, 783 P.2d 698. In that case, the court found Kelly-Frye inapt to expert testimony regarding the defendants' propensity for sexual deviance. The court acknowledged Kelly-Frye theoretically could apply to "`a new scientific process operating on purely psychological evidence.' [Citation.]" (Id. at p. 1156, 265 Cal.Rptr. 111, 783 P.2d 698.) However, the court warned that "absent some special feature which effectively blindsides the jury, expert opinion testimony is not subject to Kelly/Frye." (Id. at p. 1157, 265 Cal.Rptr. 111, 783 P.2d 698.)
There was nothing about Dr. Elliot's testimony that could have blindsided the jury. Rather than relying on some scientific technique or procedure, Dr. Elliot formulated her opinions based on her personal evaluations of the plaintiffs. Just as a medical doctor studies a patient to identify a physical ailment, Dr. Elliot examined plaintiffs' psychological symptoms to diagnose their mental condition. Consequently, Dr. Elliot's testimony on her findings amounted to little more than run-of-the-mill expert medical opinion. (See People v. Cegers (1992) 7 Cal.App.4th 988, 995-1000, 9 Cal.Rptr.2d 297 [Kelly-Frye inapplicable to psychological evidence derived from expert's personal examination]; Seering v. Department of Social Services (1987) 194 Cal.App.3d 298, 314, 239 Cal. Rptr. 422 [same].)
We are mindful courts have invoked Kelly-Frye in cases where a party's memory was induced by hypnotism or drugs. (See, e.g., People v. Shirley (1982) 31 Cal.3d 18, 181 Cal.Rptr. 243, 723 P.2d 1354; Ramona v. Superior Court (1997) 57 Cal.App.4th 107, 66 Cal.Rptr.2d 766; Schall v. Lockheed Missiles & Space Co. (1995) 37 Cal. App.4th 1485, 44 Cal.Rptr.2d 191.) But here, the plaintiffs recalled Phillips' molestation on their own accord. Thus, the danger of perceived infallibility associated with a scientific process was not present. (Also compare Trear v. Sills (1999) 69 Cal.App.4th 1341, 1345, 82 Cal.Rptr.2d 281 [expressing doubt without deciding whether evidence of therapy-induced memories of sexual abuse could pass muster under Kelly-Frye].) We therefore uphold the admission of Dr. Elliot's testimony.[5]

III
In a makeweight argument, Phillips challenges the timeliness of plaintiffs' lawsuit. Although he concedes plaintiffs complied with the applicable statute of limitations (Code Civ. Proa, § 340.1), Phillips contends their action should be deemed time-barred because the statute fails to adequately protect against false claims of molestation. However, rather than offering any specific grounds for contesting the statute, Phillips simply assails it as an illconceived boondoggle for plaintiffs' attorneys.[6]
Phillips forgets our task is not to review the wisdom and efficacy of legislative enactments. (Santa Monica Beach, Ltd. v. Superior Court (1999) 19 Cal.4th 952, 962, 81 Cal.Rptr.2d 93, 968 P.2d 993.) Instead, we must follow the will of the *209 Legislature as expressed by the plain terms of the statute. (People v. Loeun (1997) 17 Cal.4th 1, 9, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) By Phillips' own admission, the statute in question is clear insofar as it allows an action for childhood sexual abuse to be filed "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse[.]" (Code Civ. Proc, § 340.1, subd. (a).) Because plaintiffs met the statutory deadline, their lawsuit was timely.
The judgment is affirmed. Respondents shall recover their costs on appeal.
BEDSWORTH, J., concurs.
CROSBY, Acting P.J., Concurring:
I concur in the lead opinion, but add this to emphasize that today's decision is not inconsistent with our decision in Treat v. Sills (1999) 69 Cal.App.4th 1341, 82 Cal. Rptr.2d 281. In Treat we expressed skepticism of the induced recall of old memories (in language that should have been more precise, perhaps) and suggested the method used might be subject to evaluation per People v. Kelly (1976) 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240. (Treat, supra, at pp. 1345 and 1345-1346, fn. 14, 82 Cal.Rptr.2d 281.) That is not this case.
Here we recognize that spontaneously regained and "jogged memory" recollections are commonplace[1] and merely an evidentiary issue for the judge and jury to deal with under existing rules. (See, e.g., Evid.Code, § 771.) Indeed, under some circumstances such evidence may be received even if the witness now lacks present memory. (Evid.Code, §§ 1237-1238.)
NOTES
[*] Kennard, J., dissented.
[**] Retired Associate Justice of the Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Having been made on the eve of oral argument, we deny as untimely the application of the Victim Advocacy and Research Group, et al., for leave to file an amicus curiae brief in support of respondents. (See Cal. Rules of Court, rule 14(c).)
[2] The Frye decision has been abrogated by the Federal Rules of Evidence. (Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993) 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.) However, because "the Kelly/Frye formulation [] remain[s] a prerequisite to the admission of expert testimony regarding new scientific methodology in this state" (People v. Leahy (1994) 8 Cal.4th 587, 591, 34 Cal.Rptr.2d 663, 882 P.2d 321), we reference Frye along with Kelly in this opinion.
[3] Phillips also attacks Hart's testimony on Kelly-Frye grounds. However, Hart did not testify as an expert on repressed memory. Moreover, Phillips waived his right to challenge Hart's testimony by withdrawing his objection to her testimony. (See Evid.Code, § 353, subd. (a); In re Marriage of Broderick (1989) 209 Cal.App.3d 489, 501, 257 Cal.Rptr. 397.)
[4] Phillips cites People v. Bledsoe (1984) 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 as an instance where the Supreme Court used Kelly-Frye to exclude expert psychological testimony. But the court there "did not hold that the Kelly/Frye test applied to the expert opinion in that case, nor did [the court] discuss the test's relationship to syndrome or other expert psychological evidence in general." (People v. Ward, supra, 71 Cal.App.4th at p. 374, 83 Cal.Rptr.2d 828, internal quotation marks omitted.) Therefore, Bledsoe does not assist Phillips' cause.
[5] Phillips raises a number of subsidiary arguments relating to the admissibility of Dr. Elliot's testimony. However, they are all premised on the belief that Kelly-Frye applies in this case. Because we conclude otherwise, we need not address these arguments.
[6] More particularly, Phillips alleges that in enacting the statute "[l]egislators were sympathetic to testimony from groups, including plaintiffs' attorneys, victims rights organizations [sic ], and other similarly disposed parties which argued that plaintiffs who were traumatizes [sic ] into repressing memories of alleged incidents should be allowed their day in court. Either scientific critics of the theory (of repressed memory) were unavailable or not represented and many legislators based their legislation on faulty, incomplete, anecdotal and one-sided testimony."
[1] Wilson's recollection was spontaneous; Nemeth's was apparently triggered by Wilson's telling her about her flashback.