83 Cal.Rptr.2d 828 (1999)
71 Cal.App.4th 368
The PEOPLE, Plaintiff and Respondent,
v.
Ronald William WARD, Defendant and Appellant.
No. E020993.
Court of Appeal, Fourth District, Division Two.
April 13, 1999.
As Modified April 21, 1999.
Review Denied July 28, 1999.
*829 Lynne G. McGinnis, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Jeffrey J. Koch, Supervising Deputy Attorney General, Bradley A. Weinreb and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
GAUT, J.

1. Introduction

Defendant Ronald William Ward (defendant) appeals from a judgment following a jury finding that he is a sexually violent predator within the meaning of Welfare and Institutions Code section 6600.[1] The court ordered that defendant be committed to Atascadero State Hospital for a period of two years, beginning on July 21, 1997.
The Sexually Violent Predators (SVP) Act provides for the continued confinement of "sexually violent predators" in the custody of the Department of Mental Health (DMH) after they have served their prison sentences. The act defines a sexually violent predator as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed *830 mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) The initial commitment is for a term of two years, which can be extended by filing subsequent petitions. (§ 6604.) A more detailed description of the SVP Act is found in Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584.
On appeal, defendant attacks the SVP Act on several fronts. Defendant also claims instructional error and error regarding the length of his commitment. We-affirm the judgment.

2. Facts

Defendant has suffered a number of previous convictions for sexual misconduct. In 1978, defendant pleaded guilty to two counts of rape against an adult female hitchhiker. (Pen.Code, §§ 261.1 and 261.3.) In 1981, defendant attacked a 13-year-old girl. He pleaded guilty to one count of committing lewd or lascivious behavior against a minor by means of threat or force or both. (Pen. Code, § 288, subd. (b).) In 1985, plaintiff sexually molested his two stepchildren, a five-year-old girl and a three-year-old boy. He struck the girl and threatened both children. He pleaded guilty to five counts in violation of Penal Code section 288, subdivision (b). He received a 20-year prison sentence.
In anticipation of defendant's release on parole from the last conviction, the District Attorney of Riverside County filed a petition for commitment pursuant to Welfare and Institutions Code section 6600 et seq., the SVP Act. The petition was supported by evaluations from a psychologist and a psychiatrist, Jeffrey J. Lille (Lille) and Donald S. Patterson (Patterson), both of whom testified at trial that defendant was a sexually violent predator.
On behalf of the defense, Theodore Donaldson, a psychologist, testified that the diagnostic procedures used by Lille and Patterson were unreliable and unscientific.

3. The Constitutionality of Section 6600 et seq.

Defendant offers a cursory challenge to the constitutionality of the SVP statutes on equal protection grounds and under the California Constitution. The brief arguments advanced by defendant on these points have now been rejected by the California Supreme Court in the Hubbart case.

4. Expert Testimony

In addition to his constitutional challenge, defendant attacks the requirement of the SVP Act that two mental health professionals determine whether a criminal defendant is likely to reoffend. Section 6601, subdivision (d), requires a potential sexually violent predator to be evaluated by two psychiatrists or psychologists or a combination of a psychologist and a psychiatrist. Defendant argues, however, that the expert evidence did not meet the Kelly-Frye[2] standards for admissibility of scientific evidence because there is no scientifically accepted way of predicting whether a person is likely to engage in acts of sexual violence. The logical outcome of defendant's position is that a sexually violent predator cannot be identified, thus rendering the SVP Act inoperative. Additionally, defendant questions the qualifications and methods of Lille and Patterson. We reject defendant's contentions.
Lille, a forensic psychologist in practice since 1987, testified that he has made approximately 100 SVP evaluations. Lille has attended several SVP training sessions and a three-day conference conducted by the DMH. He has read a great deal of literature on the topic of recidivism among sexual offenders.
Lille based his evaluation of defendant on an exhaustive document review. Applying *831 the criteria of the DSM-IV[3] used by psychologists and psychiatrists, Lille diagnosed defendant as suffering from a collection of mental disorders: paraphilia (deviant sexual behavior), learning disorders, depression, alcohol dependence, antisocial personality disorder (ASPD), serious functional impairment, and an IQ of 88, well below normal.
Because of defendant's criminal history and his current mental disorders, Lille concluded that defendant was likely to repeat his sexually violent behavior. Lille relied on several high-risk factors: an increasing pattern of deviance, defendant's ASPD, and a high degree of paranoia. On cross-examination, Lille was somewhat equivocal on the issue of whether defendant was able to control his behavior in the past, but he concluded that defendant presently lacks volitional control.
Patterson, a forensic psychiatrist in practice since 1948, testified that he has often served as an expert on issues of mental capacity. He has attended SVP training sessions and professional forums and read the medical literature on sexual predators.
Patterson also conducted a document review. Additionally, he interviewed defendant until defendant became irritated and stopped the interview. Patterson concurred with Lille's diagnosis of paraphilia, substance abuse, and ASPD. He included a diagnosis of pedophilia. He found defendant to be an SVP.
As a defense expert, Theodore Donaldson (Donaldson), a forensic psychologist in practice since 1963, testified that he had considerable experience evaluating sex offenders. He was formerly a member of the SVP evaluation panel until he was terminated due to conceptual disagreements with other panel members. Donaldson testified that it is more accurate to predict recurring sexually violent behavior by using an actuarial model rather than the clinical model employed by the other doctors and favored by the DMH. Actuarial prediction is accomplished by using a mathematical model to relate risk factors to outcomes. Donaldson was not asked to render an opinion as to whether or not defendant was a sexually violent predator.
The trial court ruled that the testimony by Lille and Patterson was not subject to a Kelly-Frye analysis because the evidence did not involve a new scientific technique. Additionally, even if Kelly-Frye applied, the expert evidence qualified for admission and the two experts were qualified to testify. On appeal, defendant argues that predictions of future dangerousness involve scientific techniques which are not generally accepted in the scientific community. Additionally, he maintains the plaintiffs experts were not qualified to testify.
The threshold question is whether expert psychiatric or psychological testimony in this case is scientific evidence subject to Kelly-Frye. We hold it is not, California distinguishes between expert medical opinion and scientific evidence; the former is not subject to the special admissibility rule of Kelly-Frye. (People v. McDonald (1.984). 37 Cal.3d 351, 372-373, 208 Cal.Rptr. 236, 690 P.2d 709.) Kelly-Frye applies to cases-involving novel devices or processes, not to expert medical testimony, such as a psychiatrist's prediction of future dangerousness or a diagnosis of mental illness. (37 Cal.3d at pp. 372-373, 208 Cal.Rptr. 236, 699 P.2d 709; People v. Mendibles (1988) 199 Cal.App.Sd 1277, 1293-1294, 245 Cal.Rptr. 553.)
Similarly, the testimony of a psychologist who assesses whether a criminal defendant displays signs of deviance or abnormality is not subject to Kelly-Frye. (People v. Stoll (1989) 49 Cal.3d 1136, 1155-1159, 265 Cal.Rptr. 111, 783 P.2d 698.) In the latter case, the court observed: "No precise legal rules dictate the proper basis for an expert's journey into a patient's mind to make judgments about his behavior." (Id., at p. 1154, 265 Cal.Rptr. 111, 783 P.2d 698.) It also described a psychological evaluation as "a learned professional art, rather than the purported exact `science' with which Kelly/Frye is concerned...." (Id., at p. 1159, 265 Cal. Rptr. 111, 783 P.2d 698.)
Furthermore, in a number of other contexts, the law has often permitted mental *832 health experts to discern present or imminent dangerous behavior. Pen.Code, § 1026.5, subd. (b)(1) [extension of insanity commitment]; Pen.Code, § 2962 [mentally disordered offenders]; § 5300 [conservatorship].) These other situations cannot reasonably be distinguished on the basis that they do not involve sex-related offenses.
Defendant relies on People v. Bledsoe (1984) 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 and People v. Bowker (1988) 203 Cal.App.3d 385, 249 Cal.Rptr. 886, in which the courts held that an expert may be precluded from testifying regarding rape-trauma syndrome and child sexual abuse accommodation syndrome in a criminal case. In People v. Stoll, supra, 49 Cal.3d at p. 1161, 265 Cal.Rptr. 111, 783 P.2d 698, the Supreme Court said: "Bledsoe acknowledged a handful of out-of-state cases applying the Frye test to evidence of `rape trauma syndrome' on grounds that juries might view this therapeutic diagnosis as `scientific' proof a rape had occurred. (See 36 Cal.3d at p. 248, 203 Cal. Rptr. 450, 681 P.2d 291.) However, Bledsoe did not hold that the Kelly /Frye test applied to the expert opinion in that case, nor did we discuss the test's relationship to `syndrome' or other expert psychological evidence in general. [Footnote omitted.] Assuming, like the parties, that the test did apply, we simply concluded that the prosecution would not be able to prove that rape trauma syndrome was generally accepted by the counseling community to prove criminal guilt." The court then held that Kelly-Frye did not apply to psychological evidence of a defendant's character. (Ibid.)
In civil commitment cases, where the trier of fact is required by statute to determine whether a person is dangerous or likely to be dangerous, expert prediction may be the only evidence available. (People v. Murtishaw (1981) 29 Cal.3d 733, 772, 175 Cal. Rptr. 738, 631 P.2d 446, citing People v. Henderson (1980) 107 Cal.App.3d 475, 484, 166 Cal.Rptr. 20; People v. Martin (1980) 107 Cal.App.3d 714, 724-725, 165 Cal.Rptr. 773; People v. Mapp (1983) 150 Cal.App.3d 346, 352, 198 Cal.Rptr. 177; People v. Superior Court (Blakely) (1997) 60 Cal.App.4th 202, 215, 70 Cal.Rptr.2d 388.) When the standard of proof for commitment is beyond a reasonable doubt, the evidence is admissible. (People v. Burnick (1975) 14 Cal.3d 306, 328, 121 Cal.Rptr. 488, 535 P.2d 352; Martin, supra, at p. 725, 165 Cal.Rptr. 773.) The trier of fact can then decide what weight to give it. (Henderson, supra, at p. 486, 166 Cal.Rptr. 20.)
Based on the foregoing, we conclude that the trial court did not abuse its discretion when it admitted expert testimony regarding the likelihood that defendant was an SVP and likely to reoffend. (People v. Chavez (1985) 39 Cal.3d 823, 828, 218 Cal.Rptr. 49, 705 P.2d 372.)
We also reject defendant's criticisms of the qualifications and methods of the plaintiffs two experts. Again, we defer to the trial court's decision to admit their testimony. (People v. Chavez, supra, 39 Cal.3d at p. 828, 218 Cal.Rptr. 49, 705 P.2d 372.) Both doctors had extensive experience in making psychological and psychiatric evaluations. Their expertise in diagnosis and treatment was closely related to the opinions they formed. Both doctors also applied accepted diagnostic techniques in reaching their conclusions. Whether they used clinical or actuarial models and whether they specifically followed the DMH handbook are not reasons to exclude their testimony. Even if a difference of opinion exists among professionals on these matters, the experts were not restricted to one methodology or another. To repeat the statement taken from Stoll, we cannot dictate the expert's journey into a patient's mind. (People v. Stoll, supra, 49 Cal.3d at p. 1154, 265 Cal. Rptr. 111, 783 P.2d 698.) Instead the jurors could make their own judgment about the qualifications of the experts and the value of their opinions.

5. Instructional Error

Defendant asked for the following instruction: "`Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others. In other words, the diagnosed mental disorder must render the person unable to control his dangerous behavior. *833 Because of the need for volitional impairment, a DSM-IV diagnosis is not, standing alone, sufficient proof of a `diagnosed mental disorder' within the meaning of Welfare and Institutions Code section 6600. [¶] Danger to the health and safety of others does not require proof of a recent overt act while the offender is in custody. [¶] Recent over[t] acts means any criminal act that manifests a likelihood that the act[or] may engage in sexually violent predatory criminal behavior."
The non-italicized language is taken directly from section 6600, subdivisions (c), (e), and (f). The court gave the instruction without the italicized language. Defendant asserts the instruction, as given, was error. We disagree.
The first italicized sentence was covered by an instruction in which the jury was told: "The diagnosed mental disorder must render the person linable to control his dangerous behavior." The jury was also instructed: "In determining what weight to give to any opinion expressed by an expert witness, you should consider the qualifications and believability of the witness, the facts or materials upon which each opinion is based, and the reasons for each opinion." The latter instruction encompassed the substance of the second italicized sentence. Any omission was cured. (People v. Sedeno (1974) 10 Cal.3d 703, 720, 112 Cal.Rptr. 1, 518 P.2d 913, disapproved of on other grounds in People v. Flannel (1979) 25 Cal.3d 668, 685, 160 Cal.Rptr. 84, 603 P.2d 1.) Further instruction would have been cumulative.
Nor was the second italicized sentence appropriate as a statement of law. Defendant cites a passage from Kansas v. Hendricks, 521 U.S. 346, 357-361, 117 S.Ct. 2072, 2080-2081, 138 L.Ed.2d 501, in which the court commented that legal definitions often do not and need not mirror medical definitions of mental illness. We do not read this language as an imperative to give the instruction favored by defendant. Instead, we agree with the People that the requested instruction constitutes argument, not a principle of law, and should not have been given. (People v. Wright (1988) 45 Cal.3d 1126, 1152-1154, 248 Cal.Rptr. 600, 755 P.2d 1049.)

6. Precommitment Credits

The court ordered defendant be committed for two years from the date of July 21, 1997. Defendant contends that he should receive credit against his commitment for the 231 days he was in jail before the jury made its finding.
Defendant's arguments are answered by the enactment of section 6604.1, effective April 14, 1998, which states in part: "The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment." (§ 6604.1, subd. (a).) As reproduced in the notes to that code section, section 10 of Stats.1998, c. 19, provides: "Sec. 10. The Legislature finds and declares that the provisions of Article 4 (commencing with Section 6600) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code establish a civil mental health commitment for a period of two years for persons found to be sexually violent predators and that, consistent with a civil mental health commitment, credits that may reduce a term of imprisonment are not applicable. Accordingly, the Legislature finds and declares that Section 5 of this act, which adds Section 6604.1 to the Welfare and Institutions Code, does not constitute a change in, but is declaratory of, existing law." (Historical and Statutory Notes, 73D West's Ann. Welf. & Inst.Code (1998 ed.) foil. § 6604.1, p. 257.)
We therefore conclude that defendant cannot receive commitment credit for his jail time.

7. Disposition

The judgment is affirmed.
HOLLENHORST, Acting P.J., and RICHLI, J., concur.
NOTES
[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.
[2] The formulation for admissibility of scientific evidence derived from People v. Kelly (1976) 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 and Frye v. United States (D.C.Circ.1923) 54 App.D.C. 46, 293 F. 1013 is still viable in California. (People v. Leahy (1994) 8 Cal.4th 587, 598-604, 34 Cal.Rptr.2d 663, 882 P.2d 321.)
[3] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994). We grant defendant's unopposed request for judicial notice. (Evid.Code, §§ 452 and 453.)