35 P.3d 82

STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

The Honorable Kenneth L. FIELDS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Jaime Medina; James A. Edwards; Anthony Armstrong; Joe Monsivais; Marshall Oge; William Alan Green; Murray Fields; Moises Loustaunau; Richard Ugalde; Brian Nowazek; Fletcher Blaisdell; Christopher Frey; James Alan Arnett; Newell R. Nelson; Gregory Dale Morris; Edward Ross Bowman; David Rae Herriges; Wayne Relf; Jordan Earl Madison Jr.; Leobarde H. Valenzuela; Stephen R. Hill; Eugene Glass; Charles Payne; Samuel Ivan Schwan; Paul Norman Warren; James Ian Miller; Richard Lewis Klein; Melvin E. Clifton; James R. Burson; Frank Kinsey; Eugene A. Schillhahn; Danny Adam Stolp; John Batista Torte; Charles R. Chapman; Michael Keith Smith; Robert M. Lopez; George O. Milligan; Orton G. Innis; Ronald G. Osborne; Harry L. Gross; Gary Lea Keith; Steven Harris Lerman; Michael Deran Ward; Thomas J. Vanatta; James Eric Walker; Anthony Luis Flores; David Lopez Garcia; Randy Dwayne Smith; Kevin Ray Bruns; Patricio Comacho Duenez; Michael Eugene Sutton; Corey Lee Prust; Jerry M. Contreras; Machael A. Haenel; Charles Daniel Coen; Phillip Daniel Sims; Manuel Rivera Cantu, Real Parties in Interest.

No. 1 CA–SA 01–0164.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 20, 2001.

322

Richard M. Romley, Maricopa County Attorney, by Lyn D. Kane, Deputy County

Attorney, Karen Black, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Stephen McLane Johnson, Daniel Raynak, Rick Tosto, Jonathan P. Schubert, Michael Vincent, Mesa, Attorneys for Real Parties in Interest.

## OPINION

HALL, Judge.

¶1 The state seeks special action relief from the trial court's decision to conduct a *Frye*[1] hearing to determine the admissibility of actuarial data relied upon by experts in rendering opinions on recidivism in Sexually Violent Persons Act ("SVPA") commitment proceedings. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 36-3701 to -3717 (Supp.2000). We conclude that the admissibility of the actuarial data and the expert opinion relying on such data is controlled by the Arizona Rules of Evidence and not *Frye*. We previously issued an order vacating the decision of the trial court granting a *Frye* hearing and now issue this opinion explaining our order.

## BACKGROUND

¶2 Dozens of individuals in Maricopa County filed motions requesting *Frye* hearings to contest the admissibility of expert opinion testimony on recidivism based on actuarial instruments in SVPA hearings. These cases were consolidated for a determination on *Frye'* s applicability. The trial court, interpreting *Logerquist v. McVey*, 196 Ariz. 470, 1 P.3d 113 (2000), concluded that a *Frye* hearing was necessary because "[t]he experts testifying in most of these cases do not base their testimony on actuarial data created from their personal experience or knowledge, but on data derived by a technique or principle developed by others."

¶3 In its petition for special action, the state contends that a *Frye* hearing is unnecessary because the actuarials are concerned with general characteristics of sex offenders and are not "scientific" evidence subject to the *Frye* test of admissibility. In response, real parties in interest ("respondents") contend that *Frye* applies because the use of

risk assessment tools based upon actuarial data to predict future acts of sexual violence is not generally accepted within the mental health community and because its use as a predictive tool is highly experimental.

## JURISDICTION

¶4 Acceptance of special action jurisdiction is highly discretionary. *See* Ariz. R.P. Spec. Act. Rule 3 Committee Note; *King v. Superior Court*, 138 Ariz. 147, 149, 673 P.2d 787, 789 (1983). Although special action consideration should be reserved for "extraordinary circumstances," review is appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists. *See* Ariz. R.P. Spec. Act. 1(a); A.R.S. § 12-120.21(A)(4) (1992); *see also State ex rel. Gonzalez v. Superior Court*, 184 Ariz. 103, 104, 907 P.2d 72, 73 (App.1995) (special action proper when no adequate remedy). We have also accepted special action jurisdiction for recurring legal questions of statewide importance, *see id.*, and when the "question presented is one of law, one of first impression, and one upon which lower courts, lacking appellate guidance, have rendered inconsistent judgments." *State v. Wilkinson*, 198 Ariz. 376, 378, ¶5, 10 P.3d 634, 636 (App. 2000) (review granted February 13, 2000).

¶5 The admissibility of actuarially informed expert testimony on sex offense recidivism is an issue of statewide importance. At the time this action was filed, sixty-four individuals were awaiting trial under the SVPA at the Arizona Community Protection and Treatment Center ("ACPTC"), and forty-eight people are currently confined at the facility as sexually violent persons. Twenty-three others have been committed as sexually violent persons to ACPTC's Less Restrictive Alternative. Requests for *Frye* hearings on the admissibility of testimony based upon actuarial evidence have also been made in several post-commitment cases under the SVPA. *See* A.R.S. § 36-3709(B) (permitting committed person to annually petition court for conditional release to a less restrictive alternative).

---

1. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).

¶ 6 Moreover, Arizona trial courts have rendered inconsistent decisions on the necessity of subjecting this expert testimony to a *Frye* analysis. Because resolution of this issue will assist Arizona courts in the interpretation and implementation of the SVPA, we accept jurisdiction.

## DISCUSSION

¶ 7 An SVPA commitment proceeding is initiated by the county attorney filing a petition in superior court alleging that an individual is a sexually violent person. A.R.S. § 36–3704(A). If, after reviewing the petition, the court finds probable cause to believe the person is sexually violent, it then orders that the person be detained pending trial. *Id.* § 36–3705(A), (B). Upon request, the person is entitled to a probable cause hearing. *Id.* § 36–3705(C). If the court reaffirms its finding, it is required to select a "competent professional" to evaluate whether the individual is a sexually violent person. *Id.* § 36–3705(G).[2] Each party may also select a competent professional to evaluate the person. *Id.* § 36–3703(A).

¶ 8 A sexually violent person is defined as follows:

"Sexually violent person" means a person to whom both of the following apply:

(a) Has ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial.

(b) Has a mental disorder that makes the person *likely* to engage in acts of sexual violence.

*Id.* § 36–3701(7) (emphasis added). The state has the burden of proving beyond a reasonable doubt that the person meets the statutory definition. *Id.* § 36–3707(A). To meet the § 36–3701(7) requirement, the state routinely selects a psychologist or psychiatrist to evaluate the person. Many of these professionals employ actuarial instruments[3] to help form their opinions regarding the likelihood that an individual will commit future acts of sexual violence.

### A. The *Frye* Standard in Arizona

¶ 9 In *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), Frye was convicted of second degree murder at trial. On appeal, he claimed that the trial court erred when it sustained the state's objection to the proposed testimony of the defendant's expert witness regarding the result of a systolic blood pressure "deception test"—a crude precursor to the polygraph machine—on the defendant. *Id.* at 1013–14. Defendant argued the expert testimony evidence should have been admitted under the traditional common-law test for admissibility of expert testimony because "the question involved does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge." *Id.* at 1014. In sustaining the trial court's refusal to allow the testimony, the court articulated the following test to determine the admissibility of novel scientific evidence:

Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general

**2.** A.R.S. § 36–3701(2) provides:
"Competent Professional" means a person who is:
(a) Familiar with the state's sexually violent persons statutes and sexual offender treatment programs available in this state, [and]
(b) Approved by the superior court as meeting court approved guidelines.

**3.** Actuarial data are used to create a mathematical model that relates risk factors, e.g., marital status, offense type, victim type, to recidivism rates for a known group of sex offenders. The risk rate of each person is then "scored" on the various instruments by determining the presence or absence of risk factors. The resulting score is then compared with actual recidivism rates for the study participants with the same score. This tells the experts how each person compares with a known group of sex offenders with a known recidivism rate.

acceptance in the particular field in which it belongs.

*Id.* The court held the polygraph test results inadmissible because the test had not yet gained sufficient standing and scientific recognition among physiological and psychological authorities. *Id.*

¶ 10 The *Frye* test of "general acceptance" was adopted in Arizona in *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962), a case also involving the admission of results of a polygraph test administered to the defendant but introduced by the state pursuant to the parties' pre-test stipulation. Our supreme court surveyed the cases and literature since *Frye* and concluded that polygraph test results were inadmissible absent stipulation because of the test's continuing "scientific shortcomings," *id.* at 279–80, 371 P.2d at 898, and lack of acceptance of the technique by "a larger segment of the psychology and physiology branches of science." *Id.* at 280, 371 P.2d at 898.

¶ 11 *Frye* hearings are required before admission of expert testimony that relies on new scientific tests or techniques.[4] Such testimony is admissible only if "the proponent can first demonstrate that the underlying scientific principle from which the expert's deductions are made has 'gained general acceptance in the particular field in which it belongs.'" *State v. Bogan,* 183 Ariz. 506, 509, 905 P.2d 515, 518 (App.1995) (quoting *Frye,* 293 F. at 1014). The purpose of a *Frye* hearing is to resolve the issue of "general acceptance" before trial. *Id.* The *Frye* "general acceptance" requirement is more stringent than the evidentiary rules specifically applicable to receipt of expert testimony (Arizona Rules of Evidence 702 and 703) because

> [a]ny technique that in its application was likely to have an enormous effect in resolving completely a matter in controversy had to be demonstrably reliable. Where, on the other hand, an expert opinion only helped a trier to interpret the evidence or

was susceptible to evaluation from the trier's own knowledge, it was received on a lesser showing of scientific reliability. Because "science" is often accepted in our society as synonymous with truth, there was a substantial risk of overweighting by the jury. The rules concerning scientific evidence appear to have been aimed at that risk.

Joseph M. Livermore et al., *Law of Evidence* § 702.02, at 279–80 (4th ed.2000).

¶ 12 In Arizona, *Frye* has usually been applied in cases involving the results of physical scientific tests. *See, e.g., Valdez,* 91 Ariz. at 277–79, 371 P.2d at 896–98 (polygraph evidence); *Scales v. City Court,* 122 Ariz. 231, 234–35, 594 P.2d 97, 100–01 (1979) (breathalyzer); *State v. Gortarez,* 141 Ariz. 254, 262–66, 686 P.2d 1224, 1232–36 (1984) ("voiceprint" evidence); *State v. Superior Court (Blake),* 149 Ariz. 269, 277–80, 718 P.2d 171, 179–82 (1986) (horizontal gaze nystagmus testing); *State v. Beaty,* 158 Ariz. 232, 241–42, 762 P.2d 519, 528–29 (1988) (phosphoglucomutase (PGM) blood grouping); *State v. Velasco,* 165 Ariz. 480, 486–87, 799 P.2d 821, 827–28 (1990) (silica gel blood alcohol test); *State v. Bible,* 175 Ariz. 549, 576–82, 858 P.2d 1152, 1179–85 (1993) (DNA evidence). However, *Frye* has also been applied to determine the basic reliability of techniques not necessarily involving "hard" science. *See State v. Mena,* 128 Ariz. 226, 231–32, 624 P.2d 1274, 1279–80 (1981) (hypnotically refreshed testimony).

¶ 13 In a variety of other situations, however, *Frye* has been found inapplicable. *See, e.g., State v. Roscoe,* 145 Ariz. 212, 219, 700 P.2d 1312, 1319 (1984) (dog tracking); *Baroldy v. Ortho Pharm. Corp.,* 157 Ariz. 574, 581–83, 760 P.2d 574, 581–83 (App.1988) (scientific hypothesis of causation); *State v. Richards,* 166 Ariz. 576, 577–79, 804 P.2d 109, 110–12 (App.1990) (bite mark comparison); *State v. Varela,* 178 Ariz. 319, 325–26, 873 P.2d 657, 663–64 (App.1993) (general characteristics of child sexual abuse victims).

---

4. If the scientific evidence that is challenged has been previously offered and received in evidence in other cases, a *Frye* hearing is necessary "only when the opposing party makes a timely request for such inquiry supported by authorities indicat-

ing that there may not be general scientific acceptance of the technique employed." *State v. Harris,* 152 Ariz. 150, 152, 730 P.2d 859, 861 (App.1986).

¶ 14 In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587–89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that *Frye*'s general acceptance requirement had been superseded by the 1975 enactment of Federal Rule of Evidence 702 and rejected *Frye* as the exclusive test for admitting expert scientific testimony in federal cases. Instead, the Court held that Federal Rule 702 imposes a special obligation upon a trial judge as an evidentiary "gatekeeper" to ensure that scientific evidence is not only relevant but reliable. *Id.* at 592–93, 597, 113 S.Ct. 2786. The reliability of scientific evidence is to be judged by its scientific validity. *Id.* at 589 n. 9, 113 S.Ct. 2786. Under *Daubert*, the general acceptance test is only one of several factors that a trial court may consider in determining the reliability of a particular scientific theory or technique. *Id.* at 592–94, 113 S.Ct. 2786. Six years later, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court held that *Daubert*'s gatekeeping obligation is not limited to "scientific" testimony but also applies to "non-scientific" expert testimony. *See id.* at 147–51, 119 S.Ct. 1167.[5]

¶ 15 In *Logerquist v. McVey*, our supreme court responded to these cases by reaffirming the continuing vitality of the *Frye* rule in Arizona. 196 Ariz. at 489, ¶ 57, 1 P.3d at 132. Logerquist sued her childhood pediatrician for sexually abusing her on several occasions between 1971 and 1973. She claimed that she had amnesia about these events until 1991 and sought to introduce the testimony of an expert in the area of dissociative amnesia to explain her earlier inability to recall the incidents. *Id.* at 472, ¶ 3, 1 P.3d at 115. After conducting a *Frye* hearing at the request of the defendant, the trial judge applied *Frye*'s general acceptance test and excluded the expert's proposed testimony on the phenomenon of repressed memory. *Id.* ¶¶ 4–5, 1 P.3d at 115.

¶ 16 On special action review, the Arizona Supreme Court concluded that *Frye* was inapplicable and vacated the order excluding the expert testimony. *Id.* ¶ 6, 1 P.3d at 115. The court stated that *Frye* is inapplicable "when a qualified witness offers relevant testimony or conclusions based on experience and observation about human behavior for the purpose of explaining that behavior." *Id.* at 480, ¶ 30, 1 P.3d at 123. Because the proposed testimony of Logerquist's expert was based upon his own experience, observation, and study and not primarily based on novel scientific principles advanced by others, *Frye* was therefore inapplicable. *Id.* ¶ 31, 1 P.3d 113. Rather, admissibility is initially to be determined by reference to Arizona Rule of Evidence 702. *Id.*

B. Application of *Frye/Logerquist* To Testimony Based On Actuarial Data

¶ 17 We now consider the applicability to this case of the *Frye* rule, as clarified in *Logerquist*. The trial court correctly observed that the experts testifying in most SVPA cases do not base their testimony on actuarial data created from their personal experience or knowledge, but that they instead rely on data generated by the work of others. Then, relying on the distinction in *Logerquist* between experts who reach conclusions by inductive reasoning based on their own experience (*Frye* not applicable) and those whose conclusions are deduced from the application of novel scientific principles or techniques developed by others (*Frye*

---

**5.** In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, *if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.*

(Emphasis added.) We note that the "reliable application" requirement is a significant addition to *Daubert* ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 595, 113 S.Ct. 2786.). *See generally* Comment to 2000 Amendment.

applicable), 196 Ariz. at 490, ¶ 62, 1 P.3d at 133, the trial court implicitly concluded that the use of risk assessment tools to predict behavior constitutes a novel scientific principle or technique that must pass the *Frye* general acceptance test before it may be relied upon by experts.

¶ 18 Although the trial court's focus on the inductive-deductive dichotomy in *Logerquist* is understandable, we believe it was too narrow. *Logerquist* certainly found *Frye* inapplicable to experience-based testimony, but it also reiterated that expert behavioral evidence was beyond *Frye*'s reach. *See id.* at 486, ¶ 47, 1 P.3d at 129 ("[N]or . . . do we believe [*Frye*'s] application should be broadened to apply to *behavioral* or *experience-based* testimony.") (emphasis added). In doing so, the court rejected both parties' request that Arizona abandon *Frye* and adopt *Daubert/Kumho*'s reliability test for all expert testimony. *See id.* at 472, ¶ 7, 1 P.3d at 115. Indeed, the court assailed *Kumho* as "impossible . . . to reconcile" (*id.* at 483, ¶ 41, 1 P.3d at 126) with the Supreme Court's earlier decision in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), a capital case in which the Court upheld against constitutional claims the admission of psychiatric opinion evidence predicting the probability of the defendant's future dangerousness despite evidence that such claims were unreliable.

¶ 19 The *Logerquist* majority further distanced itself from *Daubert/Kumho* by virtually endorsing the line of authority in California that distinguishes between medical opinion and scientific evidence in applying *Frye. Id.* at 479, ¶ 29, 1 P.3d at 122. In its discussion, the court quotes with approval the following passage from *Wilson v. Phillips*, 73 Cal.App.4th 250, 86 Cal.Rptr.2d 204, 207 (App.1999)(quoting *California v. Ward*, 71 Cal.App.4th 368, 83 Cal.Rptr.2d 828, 833 (App.1999)):

> California distinguishes between expert medical opinion and scientific evidence; the former is not subject to the special admissibility rule of [*People v.* ]*Kelly[,* (1976) 17 Cal.3d 24, 130 Cal.Rptr. 144, 549

P.2d 1240*]–Frye. Kelly–Frye* applies to cases involving novel devices or processes, not to expert medical testimony, such as a psychiatrist's prediction of future dangerousness or a diagnosis of mental illness. Similarly, the testimony of a psychologist who assesses whether a criminal defendant displays signs of deviance or abnormality is not subject to *Kelly–Frye.*

*Id.* As did *Logerquist, Wilson* held that a *Frye* hearing was not necessary before an expert could testify on the phenomenon of repressed childhood memory. 86 Cal. Rptr.2d at 206–08.

¶ 20 *California v. Ward*—the original source of the above quote—is directly on point with this case and, as *Logerquist* commented regarding *Wilson,* "puts the matter quite well." 196 Ariz. at 479, ¶ 29, 1 P.3d at 122. Ward, pursuing the opposite tack from respondents, sought to exclude testimony of the state's experts in an SVPA case because they relied on a clinical rather than an actuarial model [6] in forming their opinions. On appeal, he argued that predictions of future dangerousness rely on scientific techniques not generally accepted in the scientific community. Relying on that state's leading case of *People v. Stoll,* 49 Cal.3d 1136, 265 Cal. Rptr. 111, 783 P.2d 698 (1989), the court rejected the defendant's criticisms:

> Whether [the doctors] used clinical or actuarial models and whether they specifically followed the [Department of Mental Health] handbook are not reasons to exclude their testimony. Even if a difference of opinion exists among professionals on these matters, the experts were not restricted to one methodology or another. To repeat the statement taken from *Stoll,* we cannot dictate the expert's journey into a patient's mind. Instead the jurors could make their own judgment about the qualifications of the experts and the value of their opinions.

83 Cal.Rptr.2d at 832.

¶ 21 In *Stoll,* a child sexual abuse case, the Supreme Court of California held that *Frye* was inapplicable to an expert's opinion, based

---

**6.** Ward's expert testified that it was more accurate to predict recurring sexually violent behavior by using an actuarial model. *Ward,* 83 Cal. Rptr.2d at 831.

on an interpretation of test and interview results, that the defendant was unlikely to commit criminal sexual misconduct. In *State v. Varela*, we cited *Stoll* as support for our conclusion that *Frye* was inapplicable to testimony concerning general characteristics of child sexual abuse victims. 178 Ariz. at 325–26, 873 P.2d at 663–64.

 ¶ 22 We believe the trial court misapplied *Logerquist* when it granted respondents' request for a *Frye* hearing. Unlike DNA and other types of "scientific" evidence, these risk assessment tools do not have an aura of scientific infallibility. As respondents contend, and petitioners acknowledge, they are subject to interpretation and their predictive value is far less than 100%. In addition, the testifying expert must still explain to the fact-finder why he or she believes that a particular individual will likely re-offend or not re-offend. We perceive no reason why the trial court should be allowed to screen this evidence pursuant to *Frye* before it is presented to the jury, the ultimate arbiter of truth. *See Logerquist*, 196 Ariz. at 488, ¶ 52, 1 P.3d at 131.

¶ 23 Based upon our understanding of *Frye* as interpreted by *Logerquist*, we conclude that the use of actuarial models by mental health experts to help predict a person's likelihood of recidivism is not the kind of novel scientific evidence or process to which *Frye* applies. We hasten to add, lest our holding be misinterpreted, that we are not determining whether the proffered expert testimony is or is not admissible.[7] Applying *Logerquist*, we simply hold that *Frye*'s general acceptance test is inapplicable to the expert testimony here. The admissibility of such testimony, if challenged,[8] is governed by the Arizona Rules of Evidence including Rule 702 (testimony must assist trier of fact), Rule 703 (data upon which expert bases opinion must be of "a type reasonably relied upon by experts in the

particular field"), and Rule 403 (Relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."). *See Logerquist*, 196 Ariz. at 489, ¶¶ 57–58, 1 P.3d at 132.

## CONCLUSION

¶ 24 For the foregoing reasons, we grant petitioner's request for relief. We reverse the trial court's order granting respondents' motion for a *Frye* hearing and remand for further proceedings consistent with this opinion.

CONCURRING: E.G. NOYES, JR., Presiding Judge, and DANIEL A. BARKER, Judge.

---

7. Nor are we called upon to resolve whether the actuarial data should be admitted only for the limited purpose of disclosing the basis of the expert opinion. *See* Rule 703 and Comment thereto. *See infra* note 8.

8. *See* Rule 104(a) ("Preliminary questions concerning ... the admissibility of evidence shall be

determined by the court ...."); *see also* Rule 703 Comment ("The question of whether the facts or data are of a type reasonably relied upon by experts is in all instances a question of law to be resolved by the court prior to the admission of the evidence.").