(257 P.3d 1256)
Nos. 103,505
103,506

In the Matter of the Care and Treatment of DOUGLAS GIRARD. In the Matter of the Care and Treatment of EUGENE MALLARD.

Opinion filed June 24, 2011.

*Sam S. Kepfield*, of Hutchinson, for appellants.

*Kristafer R. Ailslieger*, deputy solicitor general, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BERGER, JJ.

PIERRON, J.: Appellants Douglas Girard and Eugene Mallard appeal the orders of the district court committing them to the custody of the Secretary of Social and Rehabilitation Services and placing them in the Sexually Violent Predator Treatment Program at Larned State Hospital (Larned) under K.S.A. 59-29a01 *et seq.* Appellants challenge the admissibility of the evidence regarding the STATIC-99 and the MnSOST-R tests in determining their likelihood of recidivism. We affirm.

Appellants do not challenge the sufficiency of the evidence of the district court's order. Rather, they present a legal question regarding the admissibility of certain evidence. In 2000, Mallard was convicted of two counts of aggravated indecent liberties with a child. In 2006, Girard was convicted of aggravated indecent liberties with a child. Petitions for continued confinement of both Mallard and Girard as sexually violent predators were filed in September 2008 and February 2009 respectively.

The district court held the appellants' commitment hearings just over a week apart. In Mallard's case, the court held that the test under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), not the test under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), was the appropriate test in Kansas for admission of test results regarding Mallard's likelihood of reoffending. The court held that in considering the MnSOST-R and Static-99 tests, both have been subjected to peer review, published, tested, and obtained widespread acceptance. Consequently, the evidence was admissible under either *Frye* or *Daubert*. At Girard's hearing 9 days later, the court entered a two-pronged ruling. First, the court held that the results of the Mn-SOST-R and Static-99 were admissible independent of *Frye* and *Daubert* because the tests were not even scientific tests, but simply statistical analyses of various factors. In the alternative, the court renewed its holding that *Frye* applied and the MnSOST-R and Static-99 met the *Frye* criteria. In each case, the court found the appellants had met the statutory criteria of a sexually violent predator and ordered commitment to Larned.

Both Mallard and Girard appealed their commitments. The cases were consolidated on appeal, raising the same issue.

Appellants argue the district court applied the incorrect standard in determining the admissibility of the test results used to determine their chances of reoffending. The admission of expert testimony lies within the sound discretion of the trial court, and the appellate court reviews a trial court's admission of such evidence for abuse of discretion. See *State v. Brice*, 276 Kan. 758, 775, 80 P.3d 1113 (2003).

Contrary to appellants' argument, the law on the admissibility standards for admitting expert testimony in Kansas is well established and unaffected by their argument. The general acceptance test set forth in *Frye* governs the admissibility of expert scientific opinion evidence in Kansas in those situations where such a test or standard is required. See *State v. Shadden*, 290 Kan. 803, 818, 235 P.3d 436 (2010); *Armstrong v. City of Wichita*, 21 Kan. App. 2d 750, Syl. ¶ 3, 907 P.2d 923 (1995), *rev. denied* 259 Kan. 927 (1996). The Kansas federal courts also recognize *Frye* as control-

ling in Kansas state courts. See, *e.g.*, *103 Investors I, L.P. v. Square D Co.*, 222 F. Supp. 2d 1263, 1272 (D. Kan. 2002) (citing *Armstrong* in stating "*Daubert* applies to federal trial judges and not Kansas state courts"). We are duty bound to follow Kansas Supreme Court precedent and will not apply the tests set forth in *Daubert* until instructed to do so. See *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007).

As alluded to by the district court, the larger question is whether *Frye* is even applicable to the test results challenged by appellants. Both parties acknowledge the courts are split on this issue.

When considering the sufficiency of the evidence in a sexually violent predator case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a sexually violent predator. See *In re Care & Treatment of Colt*, 289 Kan. 234, 243-44, 211 P.3d 797 (2009); *In re Care & Treatment of Hay*, 263 Kan. 822, 842, 953 P.3d 666 (1998); see also K.S.A. 2010 Supp. 59-29a07(a) (stating beyond a reasonable doubt burden).

"To establish that an individual is a sexually violent predator under the Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.*, the State must prove four elements: (1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." *In re Care & Treatment of Williams*, 292 Kan. 96, Syl. ¶ 3, 253 P.3d 327 (2011).

The court in *Shadden*, 290 Kan. at 818-19, explained that a district court must use the *Frye* test if an opinion is based on scientific methods or procedures and is offered for admission, which requires that the basis of a scientific opinion is generally accepted as reliable within the expert's particular scientific field. Several courts have rejected the *Frye* admissibility requirements for actuarial risk assessment instruments that are admissible in evidence in a sexual predator commitment proceeding when such tools are used in the formation of the basis for a testifying expert's opinion concerning

the future dangerousness of a sex offender. See *State ex rel. Romley v. Fields*, 201 Ariz. 321, 328, 35 P.3d 82 (2001) (holding *Frye* inapplicable to results from actuarial tools used to predict likelihood person will engage in future acts of sexual violence); *In re Commitment of R.S.*, 173 N.J. 134, 135-36, 801 A.2d 219 (2002); *Matter of C.A.*, 146 N.J. 71, 679 A.2d 1153 (1996); *Det. of Thorell*, 149 Wash. 2d 724, 72 P.3d 708 (2003) (same). We agree with these courts and hold that appellants' arguments concerning the accuracy of these tests goes to the weight of the evidence rather than its admissibility.

Testimony regarding the future dangerousness of sexually violent predators is undoubtedly prejudicial. However, the actuarial assessments merely help the professional draw inferences from historical data or the collective experience of other professionals who have assessed sex offenders for potential recidivism. See *Fields*, 201 Ariz. at 328 ("Unlike DNA and other types of 'scientific' evidence, these risk assessment tools do not have an aura of scientific infallibility."). The purpose of actuarial assessment testimony is to assist the factfinder in determining whether a sexually violent predator is likely to commit future violent acts. The probative value of this testimony is significant and directly relevant to whether an individual should be committed as a sexually violent predator.

Affirmed.

\* \* \*

MALONE, J., concurring: I concur with the result in this case, but I disagree with the majority's holding. In my opinion, in order for the results of the MnSOST-R and Static-99 tests to be admitted into evidence to establish that an individual is a sexually violent predator, any opinion testimony based on the test results should be subject to the standard for determining the admissibility of scientific evidence in legal proceedings as set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). But here, the district court found from the evidence that the test results were admissible under the *Frye* standard, and the appellants do not challenge this finding on appeal.