Filed 6/17/26  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>KENFORT ROBIN WILLIAMS,<br>        Defendant and Appellant. | C103452<br><br>(Super. Ct. No. CR3239) |

Appellant and respondent Kenfort Robin Williams appeals from an order recommitting him to Atascadero State Hospital for two additional years, pursuant to Penal Code section 1026.5.[1]  On appeal, he contends that:  (1) the trial court erred by admitting evidence of his prior conviction and the resulting requirement that he register as a sex offender, and (2) the court's order is not supported by substantial evidence.  We disagree with both contentions and affirm.

BACKGROUND

"In early 1993, defendant, then 51 years old, was arrested for possession of methamphetamine; he was also found in possession of drug paraphernalia and a loaded firearm.  [¶]  While on bail in June 1993, defendant fired a machine gun and injured a

_____

[1]        Undesignated statutory references are to the Penal Code.

1

police officer, and the next day shot at an officer and a police dog." (*People v. Williams* (Dec. 1, 2015, C076260) [nonpub. opn.].)

"During the guilt phase of the trial the jury returned verdicts finding defendant guilty of several offenses, including attempted murder, attempted voluntary manslaughter, shooting a police dog, and possession of a machine gun. At the sanity phase of the trial, the jury deadlocked and a mistrial was declared. Thereafter the prosecution elected to accept defendant's plea of not guilty by reason of insanity. Defendant was committed to the [State Department of State Hospitals (the Department or Department)] with a maximum commitment term of 20 years 8 months." (*People v. Williams* (Feb. 25, 1997, C021557) [nonpub. opn.].)

In 2023, the People filed a petition pursuant to section 1026.5 to extend Williams's commitment to the Department, alleging that Williams represents a substantial danger of physical harm to others by reason of mental disease, defect, or disorder. Williams moved in limine to exclude evidence of: (1) his 1975 conviction for committing a lewd or lascivious act upon the body of a child under the age of 14 years and (2) the resulting requirement that he register as a sex offender.

The trial court held a hearing under Evidence Code sections 402 and 403 to determine the admissibility of this evidence. Dr. Joshua Deane, a staff psychiatrist who had worked at the Department for over 20 years and had known Williams for over 10 years, testified that: (1) the 1975 conviction was an important part of diagnosing Williams with unspecified personality disorder; (2) without the 1975 conviction, diagnosis would be more difficult; (3) it would be far more difficult to defend the diagnosis to a colleague without the 1975 conviction; (4) the facts underlying the 1975 conviction—that Williams had molested his 10-year-old stepdaughter—demonstrate that Williams still presents a danger of physical harm to others; (5) the facts underlying the 1975 conviction show a greater degree of disregard for the safety and rights of others than lesser crimes like indecent exposure or burglary; (6) Williams's requirement to

2

register as a sex offender could spark his disdain for authority and his anger at police and cause him to act violently; and (7) the registration requirement will make it harder for Williams to perform necessary tasks like finding a place to live if he were to be released.

The trial court denied the motion to exclude evidence of the 1975 conviction and the registration requirement and denied Williams's request to "sanitize" the conviction by not naming the specific offense. But the court instructed the People to refrain from asking questions about the conduct underlying the conviction unless Williams opened the door to such questions. The court also denied Williams's request to exclude evidence about his registration requirement.

At the trial, Dr. Deane testified that he had worked at Atascadero State Hospital for 23 years and had evaluated several hundred patients who had been found not guilty by reason of insanity. Dr. Deane had known Williams for approximately 10 years and had evaluated him at least twice per year. Dr. Deane stated that Williams suffered from an unspecified personality disorder and that, because of that mental disorder, Williams posed a substantial risk of physical harm to others and had serious difficulty controlling his dangerous behavior. Williams's personality disorder is characterized by a pervasive and enduring, longstanding pattern of behavior including disregard for violation of the rights of others, difficulty conforming to social norms, being deceitful, impulsivity, irritability and aggressiveness, reckless disregard for the safety of self and others, and lack of remorse. Dr. Deane also noted Williams's alcohol use disorder and methamphetamine use disorder, which had been in remission in the controlled environment of the state hospital.

Because Dr. Deane prepared a report every six months for the trial court, he was familiar with all of Williams's Department medical records, the initial evaluation of Williams from 1993, and his criminal history. Dr. Deane stated that defendant had been convicted of "child molestation" in 1975, which he agreed was a violation of section 288, subdivision (a), and also had three convictions for drunk driving. In 1993, Williams was

3

arrested for possessing methamphetamine and a loaded firearm and eventually pled guilty. While he was out on bail waiting to begin his sentence for that crime, Williams fired a machine gun at two police officers, injuring one officer and a police dog. The People charged Williams with multiple counts of attempted murder and assault on a peace officer and with possessing a machine gun, and Williams was found not guilty by reason of insanity and committed to the Department.

As evidence of Williams's risk of physical harm to others, Dr. Deane listed: (1) Williams is oppositional, irritable, and stubborn; (2) he refuses to attempt treatment programs, including relapse prevention planning, behavior therapy, anger management, and sex offender treatment; (3) he has not taken responsibility for his mental disorder's role in his violent actions; (4) he was likely to relapse into substance abuse outside the controlled environment of the Department, which could lead to violence, especially given that his commitment offenses occurred shortly after he became addicted to methamphetamine; (5) he has a disdain for authority, especially police officers, which could be exacerbated by his requirement to register as a sex offender; (6) he would not have family support in the community and planned to live in a car, which would require him to register at the police station once per month; and (7) his prior actions demonstrated that he could act out violently against police officers if he had difficulty dealing with authority or bureaucracy.

Dr. Deane acknowledged there was a diminished risk of violence at 83 years of age but noted that Williams had demonstrated that he knew how to use a gun, and aging alone did not eliminate the risk. Dr. Deane also noted that Williams had not engaged in physical violence at Atascadero State Hospital but explained that it was because the staff worked hard to avoid irritating him, and he did not have the strength to hurt the younger people confined with him at the hospital.

As evidence of Williams's serious difficulty in controlling his dangerous behavior, Dr. Deane listed: (1) Williams's difficulty following directions in the Department, which

4

had led staff to mostly leave him alone; (2) his failure in a less structured environment at the Department's conditional release program (CONREP), where he had not gotten along with others or followed directions; and (3) his risk of relapsing into substance abuse if he faced challenges after being released, which would damage his ability to restrain himself and make him more impulsive. As an example of Williams's specific risk of relapse, Dr. Deane pointed to 1993, when Williams had been sentenced to state prison but had not yet been incarcerated and decided to go to a bar, and shortly thereafter fired a machine gun at police officers. Dr. Deane also noted that the same challenges that increased Williams's risk of physically harming others once released, like his lack of a relapse prevention plan or a plan for stable housing, would increase the difficulty he faced in controlling his dangerous behavior.

Williams called three expert witnesses during the trial. Dr. Sonya Jackson, a psychiatrist who worked at Atascadero State Hospital, testified that she had treated Williams for two years beginning in 2012. More recently, she saw Williams and spoke with him near the canteen in the hospital and sat down with him three to five times to discuss his court proceedings. Dr. Jackson did not believe Williams suffered from a mental disease, posed a substantial danger of physical harm to others, or had ever had difficulty controlling any of his behavior. On cross-examination, Dr. Jackson admitted she was not very familiar with Williams's time in the CONREP program.

Dr. Arakel Davtian testified that he had served as the main treating psychiatrist for Williams's unit of approximately 40 patients for the past four months. Dr. Davtian's role was mostly to manage medications, so he did not have long meetings with Williams because Williams was not taking any medications. Dr. Davtian had only reviewed Williams's initial evaluation and monthly notes for the past couple of years; it would be impossible for him to review all of Williams's medical records. Dr. Davtian said he had not seen any symptoms, but he could not disagree with Williams's diagnosis because a personality disorder is a lifelong diagnosis that could be based on symptoms from "many,

5

many years ago." Dr. Davtian had not seen any violence or threats of violence from Williams in the past four months and, for that reason, did not believe he would be likely to commit a violent crime if released into the community. He had no reservations about discharging Williams, did not believe he would pose a danger of physical harm to others, and did not believe he would have any serious difficulty in controlling dangerous behavior. Dr. Davtian had spoken to Dr. Deane about Williams, but they did not discuss their opinions about Williams's diagnosis. Dr. Davtian was not willing to disagree with Dr. Deane because Dr. Deane had known Williams for "many, many years, much more" than he had. On cross-examination, Dr. Davtian admitted that a person with substance abuse disorders could relapse if living out of a car in Sacramento but said that he was not worried about Williams doing so.

Dr. Jirina Zahradnichova, a clinical psychologist at Atascadero State Hospital, testified that she had been on Williams's treatment team for approximately one year. She had facilitated two groups in which Williams had participated: A mandatory weekly gathering to play games and a voluntary weekly gathering to do puzzles and listen to music. Despite Williams interacting with "a lot of aggravating patients" in his unit, Dr. Zahradnichova had always seen him remain calm and respectful. She did not think he would pose a danger of physical harm living in society. Dr. Zahradnichova learned from Williams's prior psychologist that he had a reputation for grumpiness, but she had not seen it in the past year. She suggested that "unpleasant staff that have very poor social skills and are aggravating" were the cause of Williams's reputation. Dr. Zahradnichova also testified that the social worker who was supposed to work with Williams on a discharge plan to find housing and resources if he was released was new and still learning her job. On cross-examination, Dr. Zahradnichova admitted that Williams had assaulted hospital police in 2008 while trying to escape from Napa State Hospital. She initially did not remember the event, but her recollection was refreshed by her notes from a prior violence risk assessment. Dr. Zahradnichova also admitted that in

6

2023, Williams had yelled at hospital staff and slammed a door because they did not hold his bed when he was away from the hospital for court proceedings. She suggested that hospital staff had probably lied to Williams.

In closing arguments, Williams's attorney played down his past violent acts, explaining: "We are not here to judge what happened in 1993, to determine anything about the incident in 1993, or even consider the incident in 1993, except in the context as to whether or not [Williams] suffers from a mental disease, defect or disorder and whether or not that disorder makes him a danger, a physical danger to the community or causes him to have serious difficulties in controlling dangerous behavior." Williams's attorney argued: "He doesn't suffer from a mental disease, disorder and even at this time he poses no substantial danger of physical harm to others, and he has no serious difficulty in controlling his dangerous behavior today–not in 1993. Nobody is saying that this wasn't the case in 1993. Today he does not exhibit any of those behaviors, and it's time to let [Williams] be released from the hospital because of those reasons and allow him to live the rest of his life in peace."

The People responded in their closing argument: "[Williams's attorney] says this is not about 1993. And in part she's right. This is about a [section] 288 in 1973. This is about three DUI's after that. This is about possession of methamphetamine with a loaded weapon. This is about attempted murder on a peace officer, attempted manslaughter on a peace officer, assault on a peace officer, possession of a machine gun. [¶] This is about refusing to accept any diagnosis. This is about refusing to do any kind of treatment for that. This is about an escape attempt where he … did assault a guard trying to get out of the hospital. This is about him being so [obstinate] that he actually changed the rules at the Department … to work around him. [¶] This is not about 1993, and Dr. Deane testified to that. This is a longitudinal thing. This is a pervasive pattern. That's what this is about. This is about a long line of conduct."

7

The jury returned a verdict in just over two hours, finding that Williams "[d]oes suffer from a mental disease, defect or disorder and as a result he now poses a substantial danger of physical harm to others and has a serious difficulty in controlling his dangerous behavior." The trial court ordered Williams to be recommitted to Atascadero State Hospital for an additional two years. Williams filed a timely notice of appeal.

DISCUSSION

I

Williams contends the trial court erred by admitting evidence of his 1975 conviction for committing a lewd and lascivious act upon the body of a child under 14 years of age and the resulting requirement that he register as a sex offender. Williams argues, specifically, that "the mere mention of child molestation would inflame the jury because it is highly prejudicial" and "[t]he … conviction should have been excluded or sanitized as simply another offense that showed a disregard for the rights of others. Instead of mentioning section 290 registration, Dr. Deane could simply state that he has concerns about appellant interacting with government bureaucracy after a long hospitalization." We see no abuse of discretion.

As relevant here, Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will … (b) create substantial danger of undue prejudice." (Evid. Code, § 352.) " " ' " 'In applying section 352, "prejudicial" is not synonymous with "damaging." ' " ' [Citation.] ' " '[A]ll evidence which tends to prove [a disputed fact] is prejudicial or damaging to the [opposing party]'s case.' " ' [Citation.] The 'prejudice' which section 352 seeks to avoid is that which ' " 'uniquely tends to evoke an emotional bias against the [opponent] as an individual *and which has very little effect on the issues*.' " ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 29.) "A trial court's exercise of discretion under section 352 will be upheld on appeal unless the court abused its

discretion, that is, unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

At the hearing on the admissibility of Williams's prior conviction and registration requirement, Dr. Deane testified extensively about the relevance of the evidence to three facts the People had to prove: Williams's diagnosis, dangerousness, and ability to control dangerous behavior. Williams contends the People could have proven these facts without this offense, or without stating what type of offense it was, and without stating why Williams may have to interact with police regularly. But Dr. Deane's testimony is directly contrary to Williams's position. He stated that the diagnosis of personality disorders required a longitudinal view of a person's entire life to determine whether his behavior established a pervasive and enduring, longstanding pattern. Williams's conviction was important to the diagnosis, and ignoring it would make diagnosing and defending the diagnosis much more difficult. Moreover, the specific offense shows a greater degree of disregard for the safety and rights of others than lesser crimes like indecent exposure or burglary and demonstrates the extent to which Williams still presents a danger of physical harm to others. Finally, Dr. Deane explained that Williams's requirement to register as a sex offender could spark his disdain for authority and his anger at police and cause him to act violently, and would make it harder for Williams to perform necessary tasks like finding a place to live if he were to be released. Given the probative value of these two pieces of evidence, we cannot say they have " ' " ' "*very little effect on the issues*." ' " ' " (*People v. Chhoun, supra*, 11 Cal.5th at p. 29.)

At the same time, the tendency of this evidence to evoke emotional bias against Williams was minimized in two ways. First, as the trial court noted, the prior conviction is not especially prejudicial "when you contrast it with other things that [the jury is] going to hear, for example, that he attempted to murder at least two police officers and that he used a machine gun to do it." Second, the court prohibited the people from

9

discussing the underlying facts of the conviction—that Williams had molested his 10-year-old stepdaughter—despite Dr. Deane's testimony that the underlying facts showed the extent to which Williams disregarded the safety and rights of others and still presents a danger of physical harm to others. For all these reasons, we conclude the court did not exercise its discretion "in an arbitrary, capricious, or patently absurd manner." (*People v. Thomas, supra*, 53 Cal.4th at p. 806.)

Williams complains that, at a prior trial to recommit him, Dr. Deane did not testify about the 1975 conviction. Though the record does not include any transcripts from the prior trial, the trial court reviewed the transcript of Dr. Deane's testimony from a prior admissibility hearing and noted that Dr. Deane had agreed that he could express his opinion without discussing the 1975 conviction. The court later suggested that the conviction had been sanitized at the prior trial and was not "discussed" but was "still material," though the court gives little context other than noting that no experts had testified on Williams's behalf at the prior trial.

To the extent Dr. Deane's prior testimony is part of the record, it only affects the trial court's evidentiary analysis to the extent it calls into question Dr. Deane's credibility. (See *People v. DeHoyos* (2013) 57 Cal.4th 79, 123 ["An expert's testimony in prior cases involving similar issues is a legitimate subject of cross-examination when it is relevant to the bias of the witness"].) When a factual issue like credibility arises under the abuse of discretion standard, we determine whether substantial evidence supports the court's factual finding. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) As detailed above, substantial evidence supports Dr. Deane's testimony about the evidentiary value of Williams's prior conviction, so we will not second-guess the trial court's credibility determination, even assuming a discrepancy existed between his reasoning at the prior trial and the current trial. We also note that Williams's counsel did not question Dr. Deane about his prior testimony at the current admissibility hearing or the current trial, suggesting any difference in testimony was immaterial.

10

Finally, Williams selectively quotes a fragment of the People's closing argument to claim that the People "placed special emphasis" on Williams's 1975 conviction and left the jury with the impression that the conviction was "overwhelmingly important." In context, the People's closing statement actually downplayed the 1975 conviction, referring to it in just four words—"a [section] 288 in 1973"—among a list of 13 examples of Williams's conduct and concluding that: "This is a longitudinal thinking. This is a pervasive pattern. That's what this is about. This is about a long line of conduct." Both parties argued at greater length about Williams's commitment offenses in 1993 and whether his behavior had changed significantly since that time. This contextualization of the prior conviction as only one fraction of Williams's course of conduct supports our conclusion that the probative value of the prior conviction was not substantially outweighed by the probability that it would create substantial danger of undue prejudice.

## II

Williams next contends that the trial court's order recommitting him to Atascadero State Hospital for two additional years is not supported by substantial evidence. Specifically, Williams contends the record lacks substantial evidence that he represents a substantial danger of physical harm to others and has serious difficulty controlling his dangerous behavior. We disagree.

Under section 1026.5, subdivision (b)(1), a person may be recommitted to the Department beyond the maximum term of confinement only if, as relevant here, the person, " 'by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.' The last element also requires proof that the person has serious difficulty controlling his dangerous behavior." (*People v. Williams* (2015) 242 Cal.App.4th 861, 872.) "We review an order to extend commitment under section 1026.5 by applying the substantial evidence test, examining the entire record in the light

11

most favorable to the order to determine whether a rational trier of fact could have found the requirements of the statute satisfied beyond a reasonable doubt. [Citation.] A single psychiatric opinion that a person is dangerous because of a mental disorder constitutes substantial evidence to justify the extension of commitment," (*Williams,* at p. 872), as long as the opinion is based on " 'relevant, probative facts,' " rather than " 'guess, surmise or conjecture.' " (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1110.)

Here, given the standard of review, the professional psychiatric opinion of Dr. Deane was sufficient to justify the extension or Williams's commitment. In addition, Dr. Deane listed many reasons why Williams's unspecified personality disorder created a substantial danger of physical harm to others and caused him serious difficulty controlling his dangerous behavior. Viewed in the light most favorable to the jury's verdict, Dr. Deane's supporting reasons show that his opinion is based upon relevant, probative facts.

Williams contends that "[n]ot a single witness was aware of any instances in which [Williams] had behaved violently or aggressively in over 30 years," but this is incorrect. Williams's own witness, Dr. Zahradnichova, admitted that Williams had assaulted hospital police in 2008 while trying to escape from Napa State Hospital and had yelled at hospital staff and slammed a door because they did not hold his bed when he was away from the hospital. Williams's erroneous recitation of the record is also beside the point; substantial evidence supported a finding that, even though Williams generally behaved well in the controlled environment of the Department, he would pose a danger upon release because he had consistently refused treatment, he had not planned properly for his release, lacked community support, harbored special animus towards police officers who he was likely to encounter frequently due to his registration requirement, and had a history of substance abuse that coincided with prior violent episodes.

Williams's mistaken view of the record also illustrates why his citations to our opinion in *People v. Cheatham* (2022) 82 Cal.App.5th 782, and a case cited therein, *People v. Redus* (2020) 54 Cal.App.5th 998, are unavailing. In *Cheatam*, "[t]he witnesses could point to no evidence showing Cheatham had *ever* committed a single violent, aggressive, or threatening act that was attributable to his mental disorder." (*Cheatam,* at p. 794.) In *Redus*, "the experts were unable to point to any evidence of [the] appellant committing a single violent act during [his 45] years in the hospital. On the contrary, there had not been a hint of violence, threatening behavior, or aggressiveness of any kind on the part of appellant over multiple decades, even through CONREP releases and medication lapses. Rather, the evidence showed that appellant has controlled his dangerous behavior for decades, despite his ongoing delusions and paranoia." (*Redus,* at p. 1012.) Williams, on the other hand, has committed numerous violent offenses, including shooting at police officers and assaulting hospital police while attempting to escape from a state hospital. And the Department revoked Williams's conditional release to the CONREP program because he was not getting along with others or following directions. In short, these cases are not comparable to the record here.

Williams also argues that Dr. Deane's opinion was based on speculation. This argument also misses the point. As our Supreme Court has observed, the phrase " 'substantial danger of physical harm to others' [in civil commitment statutes] is without definition. In context, it appears to mean a prediction of future dangerousness by mental health professionals." (*In re Qawi* (2004) 32 Cal.4th 1, 24.) In other words, Dr. Deane— like Williams's witnesses—was making a prediction, not speculating. Such predictions are proper. As several courts have noted, "[i]n civil commitment cases, where the trier of fact is required by statute to determine whether a person is dangerous or likely to be dangerous, expert prediction may be the only evidence available. [Citations.] When the standard of proof for commitment is beyond a reasonable doubt, the evidence is

admissible.  [Citations.]  The trier of fact can then decide what weight to give it."
(*People v. Ward* (1999) 71 Cal.App.4th 368, 374.)

Williams points to the contrary opinions of his experts, but their testimony does not make Dr. Deane's testimony insubstantial.  "The credibility of the experts and their conclusions were matters resolved against [Williams] by the jury.  We are not free to reweigh or reinterpret the evidence." (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466-467.)  To the contrary, we must draw all inferences in favor of the court's order. (*Ibid.*)  Likewise, Williams's complaint that Dr. Deane did not interact sufficiently with Williams's treatment team fails given the standard of review.  Substantial evidence, including testimony from Williams's witnesses, supported inferences that (1) Williams's treatment team was relatively new and had insufficient experience to have a longitudinal view of Williams's behavior and (2) Dr. Deane had more than a decade of experience evaluating Williams and had sufficient access to the treatment team's notes.  We may not draw contrary inferences while reviewing for substantial evidence.

DISPOSITION

The order recommitting Williams to Atascadero State Hospital is affirmed.

\s\ _____
KRAUSE, Acting P. J.

We concur:

\s\ _____
BOULWARE EURIE, J.

\s\ _____
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.